IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMMIE LEQUE, | ) No. C 05-2618 MJJ (PR) |
| Petitioner, | ) **ORDER DENYING** |
| v. | ) **PETITION FOR A WRIT** |
| J. BROWN, | ) **OF HABEAS CORPUS** |
| Respondent. | ) |

Petitioner, a California prisoner incarcerated at the California State Prison, San Quentin, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a 2002 decision by the California Board of Parole Hearings ("Board")[1] finding him unsuitable for parole, and a 2004 Board decision to postpone his parole suitability hearing for a year. Respondent has filed an answer, and petitioner has not filed a traverse.

**BACKGROUND**

Petitioner was originally convicted of attempted murder in 1985 in Contra Costa County Superior Court, and he was sentenced to a term of fifteen years to life in prison. In 2002, the Board found petitioner unsuitable for parole at a hearing. Petitioner was scheduled for a subsequent parole suitability hearing on August 24, 2004. Petitioner and his attorney agreed to postpone the hearing for one year, and the request was granted. In unsuccessful

---

[1] At the time of the decision, the Board was called the California Board of Prison Terms.

habeas petitions filed in all three levels of the state courts, petitioner claimed that the Board's granting his request for postponement violated his constitutional rights.

**DISCUSSION**

**A.     Standard of Review**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgement of a State court only on the ground that he is in custody in violation of the Constitution or the laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975). Under AEDPA, this Court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court decision is "contrary to" clearly established United States Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, 'or if it confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Early v. Packer, 537 U.S. 3, 8 (2002) (quoting Williams, 529 U.S. at 405-06). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court may also grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision

2

1 that was based on an unreasonable determination of the facts in light of the evidence
2 presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); <u>Rice v. Collins</u>, 126 S. Ct.
3 969, 975 (2006).

4 B.   <u>Mootness</u>

5 Respondent alleges that the instant petition is moot because Petitioner has received at
6 least one parole suitability hearing since the filing of this petition. Respondent's argument is
7 without merit. The mootness doctrine derives from Art. III, § 2 of the Constitution which
8 requires the existence of a case or controversy through all stages of federal judicial
9 proceedings. This means that throughout the litigation, the plaintiff "must have suffered, or
10 be threatened with, an actual injury traceable to the defendant and likely to be redressed by a
11 favorable judicial decision." <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 477 (1990).
12 One exception to the mootness doctrine is where a claim is "capable of repetition yet evading
13 review." <u>Hubbart v. Knapp</u>, 379 F.3d 773, 777 (9th Cir. 2004)(habeas petition challenging a
14 two year commitment under California's Sexually Violent Predator's Act was found to
15 "evade review" because its duration was too short to be fully litigated prior to its expiration).
16 This exception to mootness applies when "'(1) the challenged action [is] in its duration too
17 short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable
18 expectation that the same complaining party [will] be subject to the same action again.'" <u>Id.</u>
19 (quoting <u>Spencer v. Kemna</u>, 523 U.S. 1, 17 (1998)).
20

21 Petitioner's claim is capable of repetition yet evading review. <u>See</u> <u>Hudson v. Kane</u>,
22 No.C 04-02232 SI, 2005 WL 2035590, at *4 (N.D. Cal. August 23, 2005) (finding that
23 "[u]nder 9th Circuit reasoning in <u>Hubbart</u>, parole suitability hearings that are conducted each
24 year fall under both exceptions to mootness."). His claim is "capable of repetition" because
25 it is reasonable to expect that he will be subject to parole suitability hearings in the future.
26 Indeed, he has had a subsequent parole hearing already at which he was again found
27 unsuitable for parole. Further, Petitioner's claim "evades review" because the time between
28 parole hearings (as little as one year) does not provide enough time for full exhaustion of the
claim through the state courts and then full litigation of the claim through the Ninth Circuit

and United States Supreme Court.[2]  Because Petitioner's claim is capable of repetition yet evading review, it is not moot.

C. <u>Legal Claims</u>

    1. <u>2004 Postponement of Hearing</u>

Petitioner claims his rights to due process and to counsel "were violated on August 25, 2004, when his appointed attorney, at the Board's behest, advised him to postpone his parole suitability hearing for one year so that he could participate in Alcoholics Anonymous."

Habeas relief cannot be granted on this claim under 28 U.S.C. § 2254(d)(1), because the United States Supreme Court has not "clearly established" either that the right to counsel applies at a parole eligibility hearing, or that due process requires inmates to be represented by counsel at such a hearing.  In <u>Dorado v. Kerr</u>, 454 F.2d 892, 896 (9th Cir. 1972), the Ninth Circuit held that due process does not entitle California state prisoners to counsel at hearings to determine the length of imprisonment and to grant or deny parole.  In <u>Burgener</u>, <u>Dorado</u> was found to be consistent with the subsequent trend of Supreme Court decisions.  <u>See</u> <u>Burgener v. California Adult Authority</u>, 407 F. Supp. 555 (N.D. Cal. 1976) (citing <u>Morrissey v. Brewer</u>, 408 U.S. 471 (1972) and <u>Gagnon v. Scarpelli</u>, 411 U.S. 778 (1973), two decisions addressing parole revocation, not parole eligibility).  Pursuant to California Penal Code section 3041.7 a prisoner serving a life sentence is entitled to be represented by counsel at any hearings pertaining to setting, postponing or rescinding parole.  California Code of Regulations title 15, section 2256, implementing Penal Code section 3041.7, provides that a prisoner may be represented at specific hearings where so indicated.  But it is doubtful that these regulations create a protected liberty interest in counsel for life prisoners at parole eligibility hearings because it does not appear that there is such a substantive right under the Constitution.  <u>See</u> <u>Bonin v. Calderon</u>, 59 F.3d 815, 841-42 (9th Cir. 1995) (denial of state-created procedural right not cognizable on habeas corpus review unless there is deprivation

---

[2]"A claim evades review if 'the underlying action is almost certain to run its course before either this court [9th Circuit] or the Supreme Court can give the case full consideration.'"  <u>Hubbart</u>, 379 F.3d at 778 (quoting <u>Biodiversity Legal Found. v. Badgley</u>, 309 F.3d 1166, 1173 (9th Cir. 2002)).

4

of substantive right protected by federal constitution).  In light of this authority, and in the absence of any citation by petitioner to the contrary, the Court finds no "clearly established" Supreme Court precedent that petitioner had a constitutional right to counsel in connection with his parole suitability hearing.  As a result, petitioner may not receive habeas relief based on the alleged violation of such a right by counsel's advice to agree to postpone his 2004 parole hearing.

In any event, even if petitioner had a constitutionally guaranteed right to counsel at his hearing, the state court's finding that counsel performed effectively was neither contrary to nor an unreasonable application of federal law.  First, the state court applied the appropriate federal standard, from <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), to find that petitioner's rights were not violated because counsel's performance was not deficient. (Resp. Ex. 3 at 2-3.)  Second, the state court reasonably found counsel's advice to be sound because petitioner was likely to be denied parole at the 2004 hearing, potentially for multiple years as had happened in 2002: petitioner had not participated in substance abuse therapy since the 2002 hearing, when the Board denied parole based on petitioner's failure to participate in such therapy.  As a result, even if the right to counsel at the hearing were "clearly established" under § 2254(d)(1), petitioner would not be entitled to habeas relief on the basis of his attorney's advice to postpone the 2004 hearing for one year.

2. <u>2002 Denial of Parole</u>[3]

a. <u>"Some Evidence"</u>

Petitioner claims that the denial of parole violated his due process rights because the decision was not based on "some evidence."[4]  A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision.  <u>Sass v. California Board of Prison Terms</u>, 461 F.3d 1123, 1128-29 (9th Cir. 2006) (adopting some evidence

---

[3]Respondent does not address petitioner's claims challenging the 2002 denial of parole in its answer.

[4]This is the fourth claim in the petition.  The first two claims were dismissed because they did not allege a violation of federal law.  The remaining claims are addressed below.

5

standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)); see also Irons v. Carey, 479 F.3d 658 (9th Cir. 2007).[5] The standard of "some evidence" is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. See Hill, 472 U.S. at 455. An examination of the entire record is not required nor is an independent assessment of the credibility of witnesses or weighing of the evidence. Id. The relevant question is whether there is any evidence in the record that could support the conclusion reached by the [administrative] board. See id. Additionally, the evidence underlying the Board's decision must have some indicia of reliability. McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002).

In assessing whether or not there is "some evidence" supporting the Board's denial of parole, this Court must consider the regulations which guide the Board in making its parole suitability determinations. California Code of Regulations, title 15, section 2402(a) states that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." The regulations direct the Board to consider "all relevant, reliable information available." Cal. Code of Regs., tit. 15, § 2402(b). Further, they list sets of circumstances tending to indicate whether or not an inmate is suitable for parole. Cal. Code of Regs., tit. 15, § 2402(c)-(d).

The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. 15 Cal. Code of Regs. § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4)

---

[5] Respondent argues that the Ninth Circuit is wrong in finding Hill's "some evidence" requirement applicable to parole denials. This Court, of course, has no discretion to disregard or overrule applicable decisions from the Ninth Circuit.

commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law.  15 Cal. Code of Regs. § 2402(d).  These circumstances are meant to serve as "general guidelines," giving the Board latitude in the weighing of the importance of the combination of factors present in each particular case.  Cal. Code of Regs., tit. 15, § 2404(c).  Once the prisoner has been found suitable for parole, the regulations set forth a matrix  to set a base term.  15 Cal. Code Regs. § 2403(a).[6]

The California Supreme Court has found that the foregoing statutory scheme places individual suitability for parole above a prisoner's expectancy in early setting of a fixed date designed to ensure term uniformity.  In re Dannenberg, 34 Cal. 4th 1061, 1070-71 (2005).

> While subdivision (a) of section 3041 states that indeterminate life (i.e., life-maximum) sentences should "normally" receive "uniform" parole dates for similar crimes, subdivision (b) provides that this policy applies "*unless* [the Board] determines" that a release date cannot presently be set because the particular offender's crime and/or criminal history raises "*public safety*" concerns requiring further indefinite incarceration.  (Italics added.)  Nothing in the statute states or suggests that the Board must evaluate the case under standards of term uniformity before exercising its authority to deny a parole date on the grounds the particular offender's criminality presents a *continuing public danger*.

Id. at 1070 (emphasis, brackets, and parentheses as in original).  In sum, "the Board, exercising its traditional broad discretion, may protect public safety in each discrete case by considering the dangerous implications of a life-maximum prisoner's crime individually." Id. at 1071.  The California Supreme Court's determination of state law is binding in this

---

[6]The matrix provides three choices of suggested base terms for several categories of crimes: for second degree murders, the matrix of base terms ranges from the low of 15, 16, or 17 years, to a high of 19, 20 or 21 years, depending on certain facts of the crime.  Id. at § 2403.  One axis of the matrix concerns the relationship between murderer and victim and the other axis of the matrix concerns the circumstances of the murder.  The choices on the axis for the relationship of murderer and victim are "participating victim," "prior relationship," "no prior relationship," and "threat to public order or murder for hire."  The choices on the axis for the circumstances of the murder are "indirect," "direct or victim contribution," "severe trauma," or "torture."  Each of the choices are further defined in the matrix.  See 15 Cal. Code Regs. § 2403(c).

7

federal habeas action.  Hicks v. Feiock, 485 U.S. 624, 629 (1988).[7]

Here, the Board found petitioner unsuitable for parole based on the facts of his commitment offense, his pre-offense alcohol abuse, insufficient participation in self-help and vocational programs in prison, and insufficient parole plans.

### (i) Commitment Offense

Under state law, the Board may consider the gravity of the commitment offense in assessing an inmate's suitability for parole.  Cal. Penal Code § 3041(b); 15 Cal. Code Regs, § 2402(c)(1).  The factors to be considered in determining whether the offense was committed in an "especially heinous, atrocious or cruel manner," so as to indicate unsuitability are whether: (1) "multiple victims were attacked, injured or killed in the same or separate incidents;" (2) the offense was committed in " a dispassionate and calculated manner, such as an execution-style murder;" (3) "the victim was abused, defiled or mutilated during or after the offense;" (4) the offense was committed in a manner demonstrating "an exceptionally callous disregard for human suffering;" and (5) "the motive for the crime is explicable or very trivial in relation to the offense."  Id.

The California Supreme Court also has determined that the facts of the crime can alone support a sentence longer than the statutory minimum even if everything else about the prisoner is laudable.  "While the board must point to factors beyond the minimum elements of the crime for which the inmate was committed, it need engage in no further comparative analysis before concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release."  Dannenberg, 34 Cal. 4th at 1071; see also In re Rosenkrantz, 29 Cal. 4th 616, 682-83 (2002) ("The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole" but might violate due process "where no

---

[7] In his third claim, petitioner asserts his right to due process was violated because the Board did not apply the matrix under California Penal Code § 3041(a)  prior to determining whether he presented a continuing public danger under § 3041(b). As discussed above, Rosenkrantz explicitly held that such an application of § 3041 was proper as a matter of state law, a holding binding on this Court. As the Board's application of § 3041(b) prior to § 3041(a) did not violate state law, it certainly did not violate any state law interest that might be protected by due process.

8

circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense."). Moreover, the federal constitutional guarantee of due process does not preclude the parole board from relying on unchanging factors such as the circumstances of the commitment offense or the parole applicant's pre-offense behavior in determining parole suitability. Sass, 491 F.3d at 1129 (commitment offenses in combination with prior offenses provided some evidence to support denial of parole at subsequent parole consideration hearing); Irons, 479 F.3d at 660, 665 (finding commitment offense and prior offenses amounted to some evidence to deny parole).

Petitioner provides the following summary of his commitment offense:

On Friday, July 27, 1984, between the hours of 8:30 a.m. and 12 noon, Leque used a belt to strangle the victim, Seidi Hanski. Leque, Ms. Hanski (victim), and Ms. Smith (roommate), had been living together for approximately one year prior to this incident. Leque and Ms. Hanski began developing problems due to their increased alcohol consumption and use of narcotics that were introduced to the victim by Mr. Leque. Ms. Hanski objected to their relationship because Leque began seeing other women and had become physically abusive. Sometime toward the middle of July, Ms. Smith learned that Leque was not working and confronted Ms. Hanski about Leque's inability to contribute to the household expenses. The two women had a conversation regarding the matter and decided to ask Leque to move and seek other living arrangements. Between 10:30 p.m. and 11:30 p.m. on July 23, 1984, John Vincent (Leque's ex-employer) arrived at the residence and asked to speak to Leque. Leque had worked for Mr. Vincent and was in possession of the company truck. When Leque exited the home to talk to Mr. Vincent, the victim closed the door and locked him out of the residence. Ms. Hanski asked Leque to place his door key in the mail slot in the door, he reluctantly complied. Leque requested to come back into the residence and Ms. Hanski refused. Approximately ten to fifteen minutes later Leque went to the rear of the home and kicked the backdoor in. The police were called. When the officers arrived, they informed the victim that there was nothing they could do since it was also Leque's residence. They did convince Leque to spend the night at a neighbor's home. The next day Ms. Smith and Ms. Hanski went to work and when they arrived home it was discovered that Leque had been at their home and removed some of his belongings. Leque made several telephone calls to the victim pleading she allow him to return to the residence. She refused his request.

On the morning of July 27, 1984, Ms. Smith was contacted at her job by Ms. Hanski's employer regarding her whereabouts. After numerous attempts to contact the victim at home, Ms. Smith went to their residence. At approximately 5 p.m. the police were notified. An officer had to gain entrance through a window. After entering the bedroom, the responding officer observed two bodies on a bed. The victim appeared to be dead and Leque appeared to be comatose with a slight pulse. The officer observed a great deal of blood and noted that Leque had suffered lacerations to the left wrist.

At the hospital, the defendant advised he had taken poison at approximately

9

> 12:30 a.m. He advised he had ingested an insecticide. In searching the residence, officers found a small wastebasket under which a light green belt with the buckle missing, had been stashed. It was later surmised that Leque used this as an instrument to strangle the victim. An autopsy was performed on the victim and it was determined that Ms. Hanski had been strangled to death.
>
> 2.   Prisoner's Version:
>
> Leque was interviewed on June 23, 2004, he indicated that his story remains the same as documented in prior reports. For approximately 2 hours, he admitted that he killed the victim and stated he was extremely sorry for what he did and that he loved the victim very much. He admitted knowing the relationship was ending it was too much and he could not handle her being with someone else. He considers the event a crime of passion. Leque indicated that if he could take that day back he would and the outcome would be totally different and that Ms. Hanski would still be alive.

(Petition at 7/2-3, Ex. C.)

The foregoing facts of the offense provided sufficient evidence that the murder was carried out in an "especially heinous, atrocious or cruel manner" under 15 Cal. Code Regs. § 2402(c)(1). The victim was abused and made to suffer during the course of the murder in that Petitioner strangled her to death with a belt. In addition, Petitioner's motive – his not wanting their relationship to end – was very trivial in relation to the offense of murdering his girlfriend. Consequently, there was "some evidence" that the facts of the commitment offense met the factors set forth in the state's regulations for indicating that the murder was committed in an "especially heinous, atrocious or cruel manner" such that petitioner was not suitable for parole.

The Court notes the concern expressed by the Ninth Circuit in <u>Biggs</u> that "over time" the Board's "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment" would "raise serious questions involving his liberty interest in parole." 334 F.3d 910, 916 (9th Cir. 2003). The Ninth Circuit has recently criticized this statement as beyond the scope of the dispute before the court: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed." <u>Sass</u>, 461 F.3d at 1129. Petitioner here had served 18 years in prison at the time of the Board's hearing, not an excessive amount of time over the sentence's minimum term of 15 years. Moreover, although the Board's denial of parole was in part based upon Petitioner's

10

commitment offense, there were numerous other reasons for their denial of parole as well, as discussed below. Therefore, Petitioner's case does not implicate the concerns raised in Biggs.

                (ii)     Additional Factors

There was additionally evidence in support of the statutory factors indicating unsuitability for parole. Although there was no indication of violence in petitioner's criminal record, there was evidence that petitioner had been physically abusive to the victim prior to murdering her. See 15 Cal. Code Regs. § 2402(c)(2). Additionally, there was evidence of an unstable social history in that petitioner had prior convictions for forgery, credit card fraud, failure to pay child support, and possession of drugs, and at the time of the offense he was using alcohol, drugs, was unemployed and attempted suicide. (Petition, Ex. B at 63-64.) See 15 Cal. Code Regs. §§ 2402(c)(3), (d)(2). Furthermore, the psychiatric report was mixed insofar as it praised petitioner for his progress, but indicated that continued to display "some features of narcissistic personality structure" that "may dispose him to some difficulty" in reintegrating into society. (Petition, Ex. B at 65-66.) See 15 Cal. Code Regs. §§ 2402(c)(5). The Board commended petitioner for participating in self-help programs, but also found that he had not participated in "substance abuse" programs, which the Board was "particularly interested in" in light of the circumstances of the murder. (Petition, Ex. B at 64-65.) See 15 Cal. Code Regs. § 2402(d)(9). The Board did commend petitioner for his good conduct and work activities in prison, and for remaining discipline-free since 1987. (Petition, Ex. B at 66-67.) See 15 Cal. Code of Regs. § 2402(c)(6). However, the Board also noted the prosecution's opposition to parole as a factor in its decision. See Cal. Penal Code § 3042.

Under these circumstances, there was "some evidence" that Petitioner was unsuitable for parole under several of the factors set forth in the statute and regulations for finding a prisoner unsuitable for parole. Consequently, the Board's decision did not violate Petitioner's right to due process, and the state court opinions upholding the Board's denial of parole are neither "contrary to" or an "unreasonable application of "clearly established Federal law." 28 U.S.C. § 2254(d)(1). Further, the Board's decision was not based on "an

11

unreasonable determination of the facts in light of the evidence presented in the State court proceeding," because there was "some evidence" in the record to support the finding of Petitioner's unsuitability for parole. 28 U.S.C. § 2254(d)(2).

### b. Characterization of Commitment Offense

Petitioner's fourth claim is that the Board found his offense to be especially cruel or egregious pursuant to a practice of "routinely and invariably" finding commitment offenses to be especially cruel or egregious. Even if petitioner could show the existence of such a practice or policy, the transcript of the decision shows that the Board considered Petitioner's commitment offense on an individual basis and in considerable detail. (Petition, Ex. B.) Moreover, as described above, the denial of parole was based on many more factors than Petitioner's commitment offense, which factors the Board also considered on an individual basis and in considerable detail. (Id.) Based on the records presented to the Court, there is no indication that the Board's decision was based on an a general practice or policy with respect to commitment offenses, as opposed to the particular factors of petitioner's case.

### c. Petitioner's Disability

In his fifth claim, Petitioner argues that the Board violated his rights under the Americans with Disabilities Act ("ADA") by "requiring" him to participate in substance abuse programs. First, he argues that this amounts to discrimination on the basis of his condition of being an addict. This argument misconstrues the Board's decision. To begin with, the Board did not cite as a reason to deny parole the fact that Petitioner had a history of substance abuse or was addicted to drugs, but rather the Board's view that Petitioner had failed to sufficiently treat his condition by participating in substance abuse programs. Moreover, as discussed above, parole was denied on the basis of a number of other reasons, not simply Petitioner's failure to undergo substance abuse treatment. Second, petitioner argues the Board discriminated against him based on his having Hepatitis because the condition may preclude him from being physically able to attend substance abuse programs and inmate work assignments. However, as the excerpt from the transcript cited by petitioner indicates, the Board did not in fact "require" his participation in such programs. Rather,

12

when Petitioner informed the Board that his condition might make him physically or medically unable to participate in the programs, the Board told Petitioner that it only "recommend[ed]" such programs "if [they are] available and if you're able to do that." (Petition at 7/12.)  Under these circumstances, the record of the Board's decision does not indicate that the Board denied parole based on Petitioner's past substance abuse or his addiction to drugs, or that the Board conditioned his parole eligibility on his participating in programs despite his physical or medical inability to do so.  Consequently, habeas relief is not available based on petitioner's claim that the Board discriminated against him on the basis of a disability in violation of the ADA.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The Clerk shall close the file.

IT IS SO ORDERED.

DATED:   11/26/07

MARTIN J. JENKINS
United States District Judge